**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

In re:

**JULIA ELIZABETH MORIARTY,**          **Chapter 7**

Debtor.                               **Case No. 13-51437**

## MEMORANDUM OPINION

The matter before the Court is the motion for summary judgment by the debtor, Ms. Julia Elizabeth Moriarty.  Although styled as a motion for summary judgment, based on the parties' joint stipulation of facts[1] and their representations at the hearing, the Court construes Ms. Moriarty's motion as one for partial summary judgment regarding whether the Court may consider Social Security income for purposes of the totality of the circumstances test under Bankruptcy Code section 707(b)(3)(B).  According to the facts and argument in the record and as more fully set forth below, the Court grants Ms. Moriarty's motion for partial summary judgment and finds, as a matter of law, the Court may not consider a debtor's Social Security income as part of the totality of the circumstances of the debtor's financial situation under section 707(b)(3)(B).

## PROCEDURAL BACKGROUND

Ms. Moriarty petitioned for relief under chapter 7 of the Bankruptcy Code on November 24, 2013.[2]  On February 12, 2014, the United States Trustee filed her first motion to dismiss the

---

[1]      Prior to the hearing, the parties filed a joint stipulation of facts wherein Ms. Moriarty conceded "that facts are in dispute which would preclude obtaining [denial of the motion to dismiss] on a summary basis."  Joint Stip. of Facts at 2 n.1, ECF Doc. No. 63 (Feb. 4, 2015).

[2]      Ch. 7 Pet., ECF Doc. No. 1 (Nov. 24, 2013).

case for abuse.[3]  In the motion to dismiss, the United States Trustee alleged Ms. Moriarty's

petition was abusive based on the totality of the circumstances test of her financial condition

under Bankruptcy Code section 707(b)(3)(B), asserting Ms. Moriarty had the ability to pay her

debts in full without modifying her lifestyle or petitioning for bankruptcy.[4]  In particular, the

United States Trustee asserted that, although Ms. Moriarty's schedules demonstrated a

substantial negative net monthly income, for the purposes of section 707(b)(3)(B), the Court

should consider her Social Security benefits, which would result in a positive net monthly

income.[5]  In response, Ms. Moriarty voluntarily converted her case to one under chapter 13 on

May 2, 2014.[6]

Upon conversion, Ms. Moriarty filed a chapter 13 plan, in which she proposed to

maintain her mortgage payments outside of her plan and pay to the trustee only the amounts

necessary to satisfy the bankruptcy administrative fees and her attorney's fees, with a zero

percent dividend to her unsecured creditors.[7]  The chapter 13 trustee objected to Ms. Moriarty's

plan, alleging, in part, that the plan was infeasible and had not been proposed in good faith.[8]

Ultimately, the chapter 13 trustee argued that Ms. Moriarty should not be in chapter 13, and,

instead, she should reconvert her case back to one under chapter 7.[9]

---

[3]     First Mot. to Dismiss Case for Abuse, ECF Doc. No. 9 (Feb. 12, 2014).

[4]     *See id.* at 4–5.

[5]     *See id.*

[6]     Order Granting Mot. to Convert to Ch. 13, ECF Doc. No. 13 (May 2, 2014).

[7]     *See* Ch. 13 Plan, ECF Doc. No. 17 (May 18, 2014).

[8]     *See* Supp. Report and Show Cause, ECF Doc. No. 41 (Aug. 21, 2014).

[9]     The chapter 13 trustee made this argument orally at the hearing held on September 3, 2015, and the matters
were continued for an evidentiary hearing.  *See* Order Continuing Hr'g and Scheduling Deadlines, ECF Doc. No. 44
(Sept. 8, 2014).

Ms. Moriarty concluded her brief foray into chapter 13 by reconverting her case back to one under chapter 7 of the Bankruptcy Code on September 18, 2014.[10]  Once again, however, the United States Trustee filed a motion to dismiss Ms. Moriarty's petition, alleging abuse based on the totality of the circumstances under Bankruptcy Code section 707(b)(3)(B), citing the same concerns as she did in her first motion to dismiss.[11]  Instead of voluntarily converting once again, however, Ms. Moriarty filed a response denying the alleged abuse and asserting that based on the language of the Social Security Act, the Bankruptcy Code, and Fourth Circuit case law, the Court could not consider Ms. Moriarty's Social Security income under the totality of the circumstances test.[12]  Accordingly, Ms. Moriarty requested the Court deny the United States Trustee's motion to dismiss.[13]

Based on the developments in the case, the Court set deadlines for filing dispositive motions, filing a joint stipulation of facts, and any memoranda or responsive pleadings thereto.[14]  That order also set a date for oral argument if needed.[15]  Thereafter, Ms. Moriarty filed this motion for summary judgment[16] and a memorandum in support,[17] in which she alleges no genuine issue of material fact and requests the Court deny the United States Trustee's motion to

---

[10]   Order Granting Mot. to Convert Case to Ch. 7, ECF Doc. No. 46 (Sept. 18, 2014).

[11]   *See* Second Mot. to Dismiss Case for Abuse at 3, ECF Doc. No. 56 (Dec. 15, 2014).

[12]   *See* Resp. to Second Mot. to Dismiss at 2–3, ECF Doc. No. 60 (Jan. 28, 2015).

[13]   *See id.*

[14]   *See* Order Setting Deadlines and Scheduling Hr'g, ECF Doc. 62 (Jan. 30, 2015).

[15]   *Id.* at 2.

[16]   *See* Mot. for Summ. J., ECF Doc. No. 61 (Jan. 28, 2015).

[17]   *See* Memo. in Support of Mot. for Summ. J., ECF Doc. No. 64 (Feb. 11, 2015).

dismiss.  The United States Trustee filed a timely response, asserting the case is abusive and

should be dismissed.[18]

## FACTUAL BACKGROUND AND STIPULATED FACTS

Prior to the hearing and to aid the Court in ruling on the motion for partial summary

judgment, Ms. Moriarty and the United States Trustee filed a joint stipulation of all material

questions of fact relevant to the inquiry.[19]  Accordingly, the Court makes the following findings

of fact, to which the parties have stipulated:

> 6.      At the time of filing, the Debtor received gross base pay from
> employment averaging to $3,226.68 per month, gross survivor's benefits from the
> Department of Labor of $2,070.46 per month, and $1,591.00 per month in Social
> Security payments under the Social Security Act.
>
> 7.      The debtor continues to receive income from employment,
> survivor's benefits from the Department of Labor, and Social Security payments.
>
> 8.      The parties agree the sole issue the Court should decide regarding
> the motion for summary judgment is whether payments received under the Social
> Security Act are part of the Debtor's financial situation when considering whether
> the granting of a discharge under chapter 7 is abusive in light of the totality of the
> circumstances of the Debtor's financial situation.[20]

The Court held a hearing on the motion for summary judgment on March 18, 2015, at which

both parties appeared and presented argument in support of their respective positions.  Upon the

conclusion of the hearing, the Court took under advisement only the question of whether it could

consider Social Security income as a part of the totality of the circumstances of the debtor's

financial condition when determining if granting a discharge is abusive under Bankruptcy Code

section 707(b)(3)(B).

## DISCUSSION

---

[18]       Memo. in Opp'n to Mot. for Summ. J., ECF Doc. No. 70 (Mar. 11, 2015).

[19]       *See* Joint Stip. of Facts at 2, ECF Doc. No. 63 (Feb. 4, 2015).

[20]       *Id.* at 2.

*a)  Summary Judgment*

At the outset, the Court accepts the parties' representations at trial and construes Ms.

Moriarty's motion for summary judgment as actually being a motion for partial summary

judgment regarding only the question of how the Court may treat her Social Security income.

The Federal Rules of Bankruptcy Procedure authorize bankruptcy courts to grant summary

judgment regarding any "claim or defense" or any "part of each claim or defense" for which

there is no "genuine dispute as to any material fact."[21]

A court should grant a motion for summary judgment when there is no genuine issue as

to any material fact, and the moving party is entitled to judgment as a matter of law.[22]  Within

the Fourth Circuit, courts consider facts "material" when they could be outcome determinative of

the question presented to the court.[23]  A genuine issue exists as to any material fact when the

evidence is such that a reasonable juror could return a verdict for the non-moving party.[24]  When

making these determinations, a court should construe any reasonable inference in favor of the

non-moving party.[25]

In the instant case, Ms. Moriarty has asked the Court to rule on summary judgment

whether the income she receives from Social Security should be considered for the purposes of

section 707(b)(3)(B).  The parties agree there is no dispute regarding the material facts of this

narrow issue, namely that the debtor receives Social Security income and that the exclusion of

such income from the section 707(b)(3)(B) test is a partial defense to the United States Trustee's

---

[21]    *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56(a)).

[22]    *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

[23]    *See id.*

[24]    *See id.*

[25]    *Id.*

motion to dismiss the case for abuse. The parties agree that the resolution of this part of the

debtor's defense is necessary at this point in the proceeding.[26] After review of the record and

considering the importance of this partial defense to the disposition of the United States

Trustee's motion, the Court finds there is no genuine issue of material fact regarding this

particular question and the issue is ripe for partial summary judgment.

     b) *Bankruptcy Code Section 707(b)(3) and Case Law*

     Section 707(b)(1) of the Bankruptcy Code authorizes a bankruptcy court to dismiss a case

filed under chapter 7 when granting a discharge in such a case would be an abuse of the

Bankruptcy Code.[27] To aide courts in determining what constitutes an abuse, section 707(b)(2)

lays out specific criteria, which, when met, create a presumption of abuse.[28] Courts refer to this

formula in section 707(b)(2) as the "Means Test."[29] When crafting the Means Test, Congress

specifically excluded from the calculation any income the debtor "received under the Social

Security Act."[30] Thus, as a result of this exclusion under the Means Test, courts do not consider

a debtor's Social Security income when determining if a discharge under chapter 7 would be

presumed to be abusive under section 707(b)(2).[31] Stated differently, a debtor's receipt of Social

Security income can never give rise to a presumption of abuse under the Means Test.

---

[26]    *See* Transcript at 16:16–21:13, ECF Doc. No. 74 (Mar. 31, 2015) [hereinafter *Transcript*]; *see also* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." (emphasis added)).

[27]    *See* 11 U.S.C. § 707(b)(1).

[28]    *See* 11 U.S.C. § 707(b)(2).

[29]    *See generally* 11 U.S.C. § 707(b)(1). For a more in-depth discussion of the Means Test, see 4 Norton Bankr. L. & Prac. 3d § 79:6 (2015).

[30]    11 U.S.C. § 101(10A).

[31]    Similarly, a debtor cannot be compelled to contribute Social Security income toward a chapter 13 plan. *See Mort Ranta v. Gorman*, 721 F.3d 241, 250–51 (4th Cir. 2013). Note, however, although courts cannot require a

If a presumption of abuse under section 707(b)(2) does not arise, however, a court may still find a discharge under chapter 7 abusive by looking to section 707(b)(3). Under section 707(b)(3), if the court finds either, (A) "the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse," a court may dismiss the case.[32]  It is this alternate authority upon which the United States Trustee relies.

The Code does not define "bad faith" for the purpose of section 707(b)(3)(A), nor does it define the terms "circumstances" or "financial condition" for the purpose of section 707(b)(3)(B).  In considering the former (bad faith) in the context of chapter 13 plan confirmation, the Fourth Circuit has questioned whether "bad faith" includes a debtor's failure to contribute Social Security income to a chapter 13 plan.[33]  Regarding the latter (totality of circumstances), the question whether Social Security income should be considered is still unanswered.

Within the Fourth Circuit, bankruptcy courts generally construe the so-called "totality of the circumstances" test of section 707(b)(3)(B) to be a means of considering the debtor's "ability to pay," based on the debtor's general financial condition, including considerations beyond those Congress could capture within the mechanical, formulaic Means Test.[34]  Courts, however, have

---

debtor to apply his or her Social Security income to fund a plan, a debtor may pledge such income voluntarily, if he or she so chooses.  *See id.* at 253–54.

[32]     *Id.* at § 707(b)(3).

[33]     *See In re Miller*, 445 B.R. 504, 508–09 (Bankr. D.S.C. 2011); *see also Mort Ranta*, 721 F.3d at 253 (suggesting a debtor's failure to include Social Security income, by itself, would not constitute bad faith).

[34]     *See, e.g., Calhoun v. United States Trustee*, 650 F.3d 338 (4th Cir. 2011) (affirming the bankruptcy court's determination that the debtors had the ability to pay more than suggested on the plan based on prepetition payments to unsecured creditors, the debtors' borderline extravagant expenses, and the absence of a negative event serving as the impetus for the debtors' petitioning for relief).

struggled in defining precisely which factors they may consider within the framework of the

totality of the circumstances, especially with regards to Social Security income.[35]

The only case within the Fourth Circuit directly addressing the question of whether courts

should consider Social Security income in the totality of the circumstances test is from this

district, authored by the now retired Judge Stone.  In that case, *In re Riggs*,[36] the court engaged in

a lengthy and well-reasoned discussion of Congress's intent to shield Social Security income

from the reach of various provisions of the Bankruptcy Code, such as section 1322(d), section

1325(b), and section 707(b)(2).[37]  Nevertheless, when considering the "totality of the

circumstances" test under section 707(b)(3)(B), the court reasoned, "balancing . . . all factors

presented in particular cases, including both the receipt of and the special nature and intended

purpose of Social Security income, seems to this judge to provide the best coherent and 'holistic'

understanding of these statutory provisions."[38]

In so ruling, the court considered several factors.  First, the court ruled that the plain

meaning of the phrase, "totality of [the debtor's] financial situation," with special emphasis on

the word "totality," demonstrated Congress's intent to have bankruptcy courts consider

everything within the operation of section 707(b)(3)—including Social Security benefits.[39]  The

court found, "the receipt of Social Security benefits, clearly a reliable and continuing source of

income," was a part of the totality of the circumstances, based partially on the sheer breadth of

the term "totality" as well as on the lack of a clear indication of the intention to exclude such

---

[35]    *See In re Riggs*, 495 B.R. 704, 713 (Bankr. W.D. Va. 2013) (discussing the Fourth Circuit's reluctance to take a position on whether courts should consider Social Security income under section 707(b)(3)).

[36]    *Id.*

[37]    *See id.* at 715–16.

[38]    *Id.* at 717.

[39]    *Id.* at 716 (alteration in original).

benefits.[40]   Accordingly, the court determined that the plain language of the statutory scheme

mandated the court consider Social Security income as part of the totality of the circumstances.

Second, the *Riggs* court reflected on the special nature of Social Security income and

why Congress might opt to treat it differently under section 707(b)(3).   The court stated, "while

Social Security income is part of the entire financial picture, it is also 'special' and intended for a

special purpose," so "it should not be treated the same as other regular income which a

bankruptcy debtor might enjoy."[41]   Based on these considerations, Judge Stone reasoned that

Congress excluded Social Security income "from the operation of general automatic rules which

otherwise would require dismissal of a Chapter 7 petition or would require that a Chapter 13

debtor must propose a five year plan or devote **all** projected disposable income to the payment of

unsecured indebtedness."[42]

Finally, the court determined that although Congress realized the unique nature of Social

Security benefits, certain circumstances might justify the consideration of such income in

determining abusiveness.   Hence, the court held:

> [A] debtor's receipt of Social Security income, taking into account all other
> relevant circumstances presented in that case, might well support a conclusion
> that the case represent[s] an abusive filing under the general provisions of Chapter
> 7, or that the use of some of a debtor's Social Security income towards the
> funding of a Chapter 13 plan might be necessary for the court to be persuaded of
> the debtor's good faith . . . .[43]

Assuming Congress wished to curb abuses that it could not precisely define within the Means

Test, the court reasoned, "it probably had no viable alternative to giving bankruptcy judges the

discretion to weigh all of the circumstances in those atypical cases in the hope that most of the

---

[40]         *Id.* (internal footnote omitted).

[41]         *Id.* at 716–17.

[42]         *Id.* at 717.

[43]         *Id.*

time they would be appropriate gate keepers to access to bankruptcy relief."[44]   Accordingly, the

court reasoned that Congress left to the courts the difficult decision of determining when such

abuse arises in the "close cases which arguably could go either way" or in which Congress could

not anticipate.[45]

Based on the foregoing considerations as well as a host of other issues with the debtors'

schedules, the *Riggs* court ruled, "the Debtors' 'financial situation' does provide them the ability

to make a meaningful settlement with their unsecured creditors without sacrificing their standard

of living or exhausting Mr. Riggs' Social Security benefit to do so," and, thus, the court allowing

the Riggs to receive a discharge without doing so would constitute an abuse of the bankruptcy

system.[46]

The *Riggs* decision, however, is not without controversy, as other courts have disagreed

with the *Riggs* decision.  In particular, Judge Dow from the Western District of Missouri

disagreed with *Riggs* in his decision *In re Johnson*.[47]   There, the United States Trustee sought

dismissal of the debtor's petition, relying on Bankruptcy Code section 707(b)(3)(B) and Judge

Dow's previous decision *In re Booker*,[48] in which the court held that it could consider Social

Security income as a part of the totality of the circumstances test.[49]   Ultimately, the *Johnson*

---

[44]     *Id.*

[45]     *See id.*

[46]     *Id.* at 724.

[47]     No. 13-20542-drd-7, 2014 WL 814740 (Bankr. W.D. Mo. Feb. 28, 2014).

[48]     399 B.R. 662 (Bankr. W.D. Mo. 2009).

[49]     *Johnson*, 2014 WL 814740, at *1.

court declined to follow the *Booker* and *Riggs* decisions and, instead, held such income was

protected from the operation of section 707(b)(3)(B).[50]

The impetus for this about-face was an intervening decision from the Eighth Circuit,

*Carpenter v. Ries (In re Carpenter)*,[51] in which the court held that Congress had shielded Social

Security benefits from forced inclusion in the bankruptcy estate.[52]  The *Johnson* court noted that

the Eighth Circuit had based its ruling in *Carpenter* on a novel argument, not raised in the

*Booker* case and which it had not yet considered.[53]  Instead of only considering the provisions of

the Bankruptcy Code, the *Carpenter* court also looked to the anti-assignment provision of the

Social Security Act.[54]  That provision provides:

> (a)  In general
> The right of any person to any future payment under this subchapter shall not be
> transferable or assignable, at law or in equity, and none of the moneys paid or
> payable or rights existing under this subchapter shall be subject to execution, levy,
> attachment, garnishment, or other legal process, or to the operation of any
> bankruptcy or insolvency law.
>
> (b)  Amendment of section
> No other provision of law, enacted before, on, or after April 20, 1983, may be
> construed to limit, supersede, or otherwise modify the provisions of this section
> except to the extent that it does so by express reference to this section.[55]

According to the *Johnson* court, this particular language from § 407 compelled reexamination of

the ruling in *Booker*.[56]  *Johnson* recognized the language of § 407 was broad and, according to

Judge Dow, "makes clear that no monies paid or payable should be in any way 'subject to the

---

[50]     *See id.* at *4.

[51]     614 F.3d 930 (8th Cir. 2010).

[52]     *See id.* at 936.

[53]     *See Johnson*, 2014 WL 814740, at *2.

[54]     42 U.S.C. § 407.

[55]     *Id.* § 407(a) & (b).

[56]     *See Johnson*, 2014 WL 814740, at *2.

11

operation of any bankruptcy or insolvency law.'"[57] Similarly, in construing the Social Security

Act, the Eighth Circuit unequivocally held, "we conclude § 407 must be read as an exclusion

provision, which automatically and completely excludes Social Security proceeds from the

bankruptcy estate."[58]  This conclusion led the *Suttice* court to conclude that Social Security

benefits should be not included in the section 707(b)(3) analysis.[59]  Similarly, the Eighth Circuit

Bankruptcy Appellate Panel concluded, based on these provisions, the failure of a debtor to

commit Social Security income to fund payments to creditors under a chapter 13 plan could not,

standing alone, constitute bad faith or prevent confirmation of the plan.[60]  Based on these

intervening decisions, Judge Dow reasoned, "denying [the debtors] access to Chapter 13 for

failure to include Social Security income makes that income subject to the operation of a

bankruptcy law, specifically § 707(b)(3)."[61]

     As part of its analysis, however, the *Johnson* court also discussed the *Riggs* decision.

The court in *Johnson* suggested that the *Riggs* decision was "somewhat equivocal," with the

court displaying some reticence in the holding.[62]  "The Court did not seem entirely comfortable

with its conclusion, noting that Social Security income is still somehow special even though it

should be considered in the § 707(b)(3) analysis."[63]  The court in *Johnson* was ultimately not

persuaded by the reasoning in *Riggs* and "conclude[d] § 407 must be read as an exclusion

---

[57]    *Id.*

[58]    *Carpenter v. Ries (In re Carpenter)*, 614 F.3d 930, 936 (8th Cir. 2010).

[59]    *See In re Suttice*, 487 B.R. 245, 252–53 (Bankr. C.D. Cal. 2013).

[60]    *See Fink v. Thompson (In re Thompson)*, 439 B.R. 140, 143 (B.A.P. 8th Cir. 2010).

[61]    *Johnson*, 2014 WL 814740, at *2.

[62]    *See id.* at *4.

[63]    *Id.*

provision, which automatically and completely excludes Social Security proceeds from the bankruptcy estate."[64]

Similarly, the Bankruptcy Court for the Central District of California in the case *In re Suttice*[65] also declined to consider Social Security benefits in its totality of the circumstances analysis. First, the *Suttice* court acknowledged that a court may not compel a chapter 13 debtor to contribute Social Security income to a chapter 13 plan, citing the Bankruptcy Code's definition of "current monthly income."[66] Next, the *Suttice* court, like the *Johnson* court, considered the language of the Social Security Act and held, "the debtors would not be compelled to fund a chapter 13 plan with their social security benefits, although they may do so voluntarily."[67] The court then noted, however, that such a holding does not necessarily mean the court cannot consider such income as a part of the totality of the circumstances of the debtor's financial condition.[68] Nevertheless, the *Suttice* court determined, "Congress intended social security benefits to be protected from inclusion in a § 707(b)(3)(B) analysis, based upon § 407(a) of the Social Security Act and as shown by the Debtors' social security income being definitively excluded from the means test of § 707(b)(2)."[69] In conclusion, the *Suttice* court reasoned, "dismissal with the aim of conversion would be a futile waste of resources unless the Debtors were ultimately compelled to remit their social security benefits to the plan."[70]

    *c) Ms. Moriarty's Social Security Income*

---

[64]    *Id.* at *3 (quoting *Carpenter*, 614 F.3d at 936).

[65]    487 B.R. 245 (Bankr. C.D. Cal. 2013).

[66]    *See id.* at 251.

[67]    *Id.* at 253.

[68]    *See id.* at 253–54.

[69]    *Id.* at 254.

[70]    *Id.*

The Court holds that as a matter of law it is not authorized to consider Ms. Moriarty's

Social Security income when considering the totality of the circumstances under section

707(b)(3)(B).  The Court bases its decision on the statutory framework of both the Bankruptcy

Code and the Social Security Act as well as the Fourth Circuit's recent decision in *Mort Ranta v.

Gorman*.[71]  Accordingly, the Court disagrees with the *Riggs* decision and rules that the statutory

scheme prohibits courts from considering Social Security benefits under the totality of the

circumstances test.

As mentioned above, Congress, in defining "current monthly income" in section

101(10A) and the calculation of "disposable income" in sections 707(b)(2)(A) and 1325(b),

specifically excluded Social Security income.[72]  In doing so, Congress protected Social Security

benefits from creditors in chapter 13 cases as well as the consideration of it for abuse in chapter 7

cases.[73]  Although, as the *Riggs* decision noted, section 707(b)(3)(B) does not employ the term

"disposable income," and thus does not expressly exclude Social Security income as the Means

Test does,[74] the Court declines to read this provision to contradict the other provisions of the

statutory scheme under the canon of statutory construction *in pari materia* ("upon the same

subject").[75]

At the hearing, counsel for the United States Trustee suggested the natural reading of

section 707(B)(3)(B) mandates that courts consider Social Security income as a part of the

debtor's total financial situation, which would not conflict with any other provision of either the

---

[71]      721 F.3d 241 (4th Cir. 2013).

[72]      *See* 11 U.S.C. § 707(b)(2).

[73]      *See Mort Ranta v. Gorman*, 721 F.3d 241, 250–52 (4th Cir. 2013).

[74]      *See In re Riggs*, 495 B.R. 704, 716 (Bankr. W.D. Va. 2013).

[75]      *See generally United States v. Stewart*, 311 U.S. 60, 64 (1940) (construing two statutory acts relating to the
same subject matter not to contradict each other).

Bankruptcy Code or the Social Security Act.[76]  Relying on *Riggs*, and distinguishing the other cases analyzing this provision, counsel for the United States Trustee asserted the language of section 707(b)(3)(B) requires the Court to look at every possible source of income, even those excluded from the bankruptcy estate, due to the breadth of the language Congress employed in drafting the provision.[77]

The Court, however, disagrees with this assertion, as it cannot read the statute in isolation from the context of the entire statutory scheme.[78]  Congress specifically excluded Social Security benefits from consideration in the Means Test, meaning such income could not give rise to a presumption of abuse, no matter the amount received.  It would make no sense for Congress to specifically exempt Social Security income from the Court's consideration in determining abuse under the Means Test, but then for the Court find abuse based on the debtor's receipt of such income anyway.  Thus, reading the statutory scheme as a whole, the most natural understanding of the provision would exclude Social Security income from consideration.

Moreover, even if the Court were to read section 707(b)(3) as entirely separate from (b)(2), the language of the Social Security Act's non-assignment provision cautions that unless expressly stated, courts may not construe any other statute "to limit, supersede, or otherwise modify" the protections particularly afforded to Social Security benefits.[79]  At the hearing, counsel for the United States Trustee asserted that a court considering such Social Security income under section 707(b)(3)(B) would not run afoul of the Social Security Act, because

---

[76]    *See Transcript, supra* note 26, at 21:17–22:12.

[77]    *See id.* at 22:1–3.

[78]    *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . .").

[79]    42 U.S.C. § 407(b).

according to his position, consideration of such income would not constitute subjecting the benefits to the "operation" of a bankruptcy law.[80]  Instead, counsel for the United States Trustee asserted "operation" means something akin to "control."[81]  Furthermore, the United States Trustee argued that to construe § 407 as broadly as Ms. Moriarty suggests would contravene the Fourth Circuit's holding in *Mort Ranta v. Gorman*, because such an understanding would bar debtors from using Social Security income even as a voluntary means of funding chapter 13 plans.[82]

The Court disagrees with the United States Trustee's characterization.  If the Court were to find abuse based on the totality of the circumstances test under section 707(b)(3)(B) based on the debtor's Social Security income after the debtor has already satisfied the Means Test, such a holding would effectively force the debtor to pledge such income in a chapter 13 plan.[83]  Such a ruling appears contrary to Fourth Circuit precedent holding that, although debtors may voluntarily pledge Social Security income to fund their chapter 13 plans, courts cannot

---

[80]     *See Transcript, supra* note 26, at 3:25–37:18.

[81]     *See id.* at 29:5–14.

[82]     *Id.* at 37:18–38:4.

[83]     As an example, the Court believes the Fourth Circuit's decision in *Solomon v. Cosby* is instructive to the controversy at bar.  *See Solomon v. Crosby (In re Solomon)*, 67 F.3d 1128 (4th Cir. 1995) (declining to find that "hypothetical" withdrawals from an exempt IRA should be included in disposable income, because the debtor had the right to exempt such income and was under no obligation to make a withdrawal earlier than he deemed necessary).  In *Solomon,* the trustee objected to a chapter 13 plan when the debtor declined to utilize exempt IRA assets or take withdraws from his retirement accounts to fund his plan.  *See id.* at 1130–31.  In finding that such income was not "disposable income," under the definition of disposable income included in the statute at that time, the Fourth Circuit declined to impute income or to force the debtor to involuntarily take distributions from his exempt retirement accounts when federal law did not authorize such.  *See id.* at 1132.

Although Ms. Moriarty's case is slightly different, the result requested by the United States Trustee is for this Court to condition bankruptcy relief upon an involuntary contribution of exempt property, excluded from the definition of disposable income, when such compulsion is not authorized by federal law.

affirmatively force them to do so.[84]  Ruling, however, that based on a debtor's Social Security

income she fails the totality of the circumstances test and may not file for relief under chapter 7,

would be essentially to give the debtor the ultimatum that if she wishes to obtain bankruptcy

relief, she must contribute her Social Security income to fund a chapter 13 plan.[85]  It is true that

in such a situation, the Court would not explicitly rule that the debtor must contribute her Social

Security income to a chapter 13 plan; however, the practical effect would be the same.  Thus, the

Court believes such a ruling would violate § 407, as the actual consequence of such a ruling

would be to compel Social Security benefits to the operation of the Bankruptcy Code without

Congress's express authorization.  It would be to effectively exercise control over the benefits.

Similarly, the Court does not agree with the United States Trustee's assertion this more

broad understanding of § 407 would contradict the Fourth Circuit's decision in *Mort Ranta*.  At

the hearing, the parties disagreed over the characterization and breadth of the phrase "operation

of any bankruptcy or insolvency law" in § 407(a).[86]  According to counsel for Ms. Moriarty, the

word "operation" refers to any time a bankruptcy or insolvency law applies to any situation

involving Social Security income.[87]  Conversely, as mentioned above, according to counsel for

the United States Trustee, § 407 merely serves to ban the exercise of "control" over an

individual's Social Security benefits but does not extend to the "consideration" of such benefits

under the Bankruptcy Code.[88]

---

[84]    *See Mort Ranta v. Gorman*, 721 F.3d 241, 250–53 (4th Cir. 2013) (declining to require a debtor to include all of his Social Security income in his chapter 13 plan beyond what he voluntarily contributed).

[85]    Such a ruling would run afoul of the Fourth Circuit's determination in *Mort Ranta v. Gorman* that bankruptcy courts cannot require debtors to pledge such income in a chapter 13 plan.  *See id.*

[86]    *See Transcript*, *supra* note 26, at 8:20–22, 29: 5–14.

[87]    *See id.* at 8:20–22.

[88]    *See id.* at 29:5–14.

The Court agrees with the United States Trustee's understanding of the necessity of "control" to violate § 407; however, it does not agree with her supposed outcome from this characterization.  Looking to the rest of § 407(a), the Court agrees that the phrase "operation of any bankruptcy or insolvency law," implies something more akin to the forcible control of—rather than merely "relating to"—Social Security benefits.  According to the statutory canon of construction *ejusdem generis* ("of the same kind, class, or nature"), when the general follows the specific, courts should construe the general in light of the particular class of the specific examples.[89]  In this case, "operation of any bankruptcy or insolvency law" follows the words, "none of the moneys paid or payable or rights existing under this subchapter shall be subject to *execution*, *levy*, *attachment*, *garnishment*, or other legal process."[90]  The emphasized words in the preceding phrase indicate Congress's intention to prohibit another entity's forcible control over the benefits an individual derives under the Social Security Act; accordingly, that is how the Court will construe the phrase "operation of any bankruptcy or insolvency law" in the immediate proceedings as well.

Contrary to the United States Trustee's position, however, based on the Court's aforementioned reasoning, consideration of Social Security income under section 707(b)(3)(B) constitutes the Court exercising control over such income.  As mentioned above, for the Court to dismiss a debtor's case because of his Social Security income alone would, as a practical matter, be exercising control over Social Security income—i.e., requiring the debtor to pledge such income in a chapter 13 plan or dismissing the debtor's case.  The Court does not believe

---

[89]      *See Gooch v. United States*, 297 U.S. 124, 128 (1936) ("[The rule of *ejusdem generis*] limits general terms which follow specific ones to matters similar to those specified.").

[90]      42 U.S.C. § 407(a) (emphasis added).

§ 407(a)'s language is so narrow as to only prohibit a "direct"—as opposed to an "indirect"—exercise of such control, as the statute forbids the operation of "*any* bankruptcy . . . law."[91]

In fact, the Court believes this understanding of the interplay between the Social Security Act and the Bankruptcy Code comports with the holding of *Mort Ranta* and is a logical outgrowth from the Fourth Circuit's reasoning therein. There, the Fourth Circuit determined that although the Bankruptcy Code does not mandate a debtor include her Social Security income in the funding of a chapter 13 plan, if a debtor choses to pledge such income for feasibility purposes, she may do so.[92] In so ruling, the Fourth Circuit reasoned:

> The bankruptcy court reasoned that if Social Security income is excluded from "disposable income," then it must also be excluded when evaluating whether the plan is feasible. But nothing in the Code supports this conclusion. Section 1325(a)(6) simply states that a debtor must be able to make the payments required by the plan; it does not state that only "disposable income" may be used to make payments. Further, it has long been established that Social Security income may be used to fund a Chapter 13 plan.[93]

The Court then went on to hold that if a debtor wishes to pledge Social Security income to fund a chapter 13 plan, the bankruptcy court must consider such income for feasibility purposes.[94] Accordingly, the *Mort Ranta* court authorized a debtor to pledge some Social Security income without requiring her to pledge all of it to fund a plan.

In so ruling, the Fourth Circuit considered Social Security benefits protected from the forcible inclusion in the bankruptcy process; however, it allowed a debtor who wished to utilize such income as a means of funding a plan to do so. Thus, the ruling was wholly in accordance

---

[91]     *See* 42 U.S.C. § 407(a).

[92]     *See id.* at 250–54.

[93]     *Mort Ranta v. Gorman*, 721 F.3d 241, 253 (4th Cir. 2013).

[94]     *See generally id.* at 253–54 ("[I]n evaluating whether a debtor will be able to make all payments under the plan and comply with the plan, the bankruptcy court must take into account any Social Security income the debtor proposes to rely upon . . . .").

with § 407(a)'s mandate that Social Security benefits could not be forcibly seized and controlled. Similarly, here, understanding § 407(a) to shield Ms. Moriarty's Social Security income from being forcibly included in a chapter 13 plan but allowing her to voluntarily pledge such income to fund a chapter 13 plan if she so chooses, is completely consistent with the Fourth Circuit's holding in *Mort Ranta*.

More fundamentally though, the Fourth Circuit in *Mort Ranta* rejected the notion that based solely on the debtor's excess Social Security income, he was able to pay more than his chapter 13 plan proposed, and thus, he had filed his plan in bad faith.[95]  Similarly, here, to deny Ms. Moriarty relief and to dismiss her case as an abuse based on her receipt of Social Security income would directly contravene the Fourth Circuit's logic in *Mort Ranta*.  The Court acknowledges that not requiring Ms. Moriarty to use her substantial Social Security income to pay more to her creditors might seem counterintuitive; however, as the Fourth Circuit opined, "the concerns of abuse raised by the Trustee are best addressed to Congress, not to this Court. The function of the judiciary is to apply the law, not to rewrite it to conform with the policy positions of the litigants."[96]

Based on this understanding of the Bankruptcy Code, the Social Security Act, and the Fourth Circuit's decision in *Mort Ranta*, the Court disagrees with *Riggs* and follows the recent trend of courts from other jurisdictions, such as in *Suttice* and *Johnson*.  Accordingly, the Court concludes that "the totality of the circumstances . . . of the debtor's financial situation" does not include a debtor's receipt of Social Security income as a matter of law.

## CONCLUSION

---

[95]      *See id.* at 252–53.

[96]      *Id.* at 253.

Ultimately, the Court finds that there is no genuine issue as to any material fact regarding the consideration of Ms. Moriarty's Social Security income under the totality of the circumstances test in section 707(b)(3)(B).  Based on the Court's review of the relevant statutory provisions and case law, the Court finds that as a matter of law, it is unable to consider such income and, thus, will not do so in this case.  To consider Ms. Moriarty's Social Security income would be for the Court to disregard the express steps Congress took to shield such income from the operation of bankruptcy law.

Date Entered:   5/18/15

Rebecca B. Connelly
U.S. Bankruptcy Judge